BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

AUG 01 2008
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QINGDAO OCEAN SHIPPING CO., Plaintiff, v. AGRENCO MADERIA COMERCIO INTERNACIONAL LDA., Defendant. | 08 Civ. 6919 (RMB) |
| | VERIFIED COMPLAINT |

Plaintiff QINGDAO OCEAN SHIPPING CO. ("Plaintiff"), by its attorneys Blank Rome LLP, complaining of the above-named Defendant AGRENCO MADERIA COMERCIO INTERNACIONAL LDA. ("Defendant"), alleges upon information and belief as follows:

1. This is a case of admiralty and maritime jurisdiction, as hereinafter more fully appears, and is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. The Court has subject matter jurisdiction.

2. At all material times, Plaintiff was and now is a foreign company organized and existing under the laws of the People's Republic of China and Buyer under a Forward Freight Swap Agreement dated 29th January 2008 ("the FFA").

3. At all material times, Defendant was and now is a corporation organized and existing under the laws of Portugal.

## THE BASIC FACTS

4. Plaintiff entered into the FFA with the Defendant on or about 29th January 2008. Ex 1 to the Rule B affidavit.

5. Pursuant to the terms of the FFA, Plaintiff issued to Defendant an invoice dated 29th July 2008. Ex 2 to the Rule B affidavit.

6. Defendant has failed, despite demand, to pay US$318,723.57 owing under the invoice and the FFA.

7. The dispute is subject to English law and English High Court jurisdiction. This action is expressly filed without prejudice to the right to action in the English High Court.

## RULE B RELIEF

8. Plaintiff repeats paragraphs 1 through 7 as if fully set forth herein.

9. Plaintiff seeks issuance of process of maritime attachment so that it may obtain security for its claims including its English attorneys' fees and court fees which are routinely awarded by the English court and no security for Plaintiff's claim has been posted by Defendant or anyone acting on its behalf to date.

10. At best as can now be estimated, Plaintiff expects to recover the following amounts in the High Court action:

| | | |
|---|---|---|
| A. | On the principal claim | $318,723.57 |
| B. | Estimated recoverable English lawyers' | $100,000.00 |

| | | |
|---|---|---|
| | costs/ court fees | |
| C. | Compound interest over the course of 3 years at prime rate average of 8% per annum | $82,774.61 |
| | TOTAL: | $501,498.18 |

11. Defendant cannot be found within this district within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Rule B"), but is believed to have, or will have during the pendency of this action, assets in this jurisdiction.

WHEREFORE, Plaintiff prays:

A. That process in due form of law issue against Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That since Defendant cannot be found within this District pursuant to Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B attaching all of Defendant's tangible or intangible property or any other funds held by any garnishee, which are due and owing to Defendant up to the amount of $501,498.18 to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and, pursuant to Rule B, answer the matters alleged in the Verified Complaint;

C. That this Court retain jurisdiction over this matter through the entry of a judgment or award associated with the pending claims including appeals thereof.

D. That Plaintiff may have such other, further and different relief as may be just and proper.

Dated: New York, NY
August 1, 2008

Respectfully submitted,
BLANK ROME LLP
Attorneys for Plaintiff

By [signature]
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
New York, NY 10174
Tel.: (212) 885-5000

VERIFICATION

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

Jeremy J.O. Harwood, being duly sworn, deposes and says:

1. I am a member of the bar of this Honorable Court and of the firm of Blank Rome LLP, attorneys for Plaintiff.

2. I have read the foregoing Complaint and I believe the contents thereof are true.

3. The reason this Verification is made by deponent and not by Plaintiff is that Plaintiff is a foreign corporation, no officer or director of which is within this jurisdiction.

4. The sources of my information and belief are documents provided to me and statements made to me by representatives of Plaintiff.

Jeremy J.O. Harwood

Sworn to before me this
1st day of August 2008

Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires Nov. 30, 2009

BLANK ROME LLP
Attorneys for Plaintiff
Jeremy J.O. Harwood (JH 9012)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| QINGDAO OCEAN SHIPPING CO.,<br>Plaintiff,<br>v.<br>AGRENCO MADERIA COMERCIO INTERNACIONAL LDA.,<br>Defendant. | 08 Civ.<br>**AFFIDAVIT UNDER SUPPLEMENTAL RULE B** |

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

JEREMY J.O. HARWOOD, being duly sworn, deposes and says:

1. I am a member of the Bar of this Honorable Court and a member of the firm of Blank Rome LLP, attorneys for the Plaintiff herein. I am familiar with the circumstances of the complaint and submit this affidavit in support of Plaintiff's request for the issuance of process of maritime attachment and garnishment of the property of defendant AGRENCO MADERIA COMERCIO INTERNACIONAL LDA, a company organized and existing under the laws of Portugal pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

2. The defendant is not incorporated or registered to do business in this State.

3. Under my supervision, my office did a search of the New York State Secretary of State, Division of Corporations, Transportation Tickler (2008 edition), telephone assistance in New York City, and the internet Yellow Pages.

4. In our search, we did not find any listing or reference to defendant in this district or state.

5. In the circumstances, I believe the defendants cannot be "found" within this district.

6. I attach as Exhibit 1 the Forward Freight Swap Agreement dated January 29, 2008.

7. I attach as Exhibit 2 Plaintiff's invoice dated July 29, 2008.

Jeremy J.O. Harwood

Sworn to before me this
1st day of August, 2008

Notary Public

KARL V. REDA
Notary Public, State of New York
No. 30-4783126,
Certificate Filed
Commission E

KARL V. REDA
Notary Public, State of New York
No. 30-4783126, Qual. in Nassau Cty.
Certificate Filed in New York County
Commission Expires Nov. 30, 2009

# Exhibit 1

# Exhibit 2

To: Nicholas ...
Fu: Cosco Qingdao

bancharo costa fd s.pa.

16121 genova
via pammatone 2

Tel +39 010 5631 251
Fax +39 010 5631 215
email derivatives@bancosta.it

banchero costa fd spa derivatives via pammatone 2 16121 Genova

# FORWARD FREIGHT AGREEMENT BROKERS ASSOCIATION ("FFABA") FORWARD FREIGHT SWAP AGREEMENT FFABA 2007 TERMS

**Trade Ref:** 08012901

**Contract Date:** Tuesday 29th of January 2008

The purpose of this Confirmation is to state the terms and conditions of the Transaction entered into between:

Keith Bentley
Lloyds M/U
0207 017 4927

**Agrenco Madeira Comercio Int. Lda** **(hereafter, "Seller")**

Attention: Mr Ney Machado
Postal Address: Avenida do Infante 50 Ilha de Madeira - Funchal Portugal
Street Address:
Telephone No:
Fax :
Email Address: ney.machado@agrenco.com, jose.vedovato@agrenco.com.br, cesar.araujo@agrenco.com.br,denis.luis@agrenco.com.br,beethowen@agrenco.com.br,tiago.uehara@agrenco.com.br,marcelo.vieira@agrenco.com

and

**Qingdao Ocean Shipping Company LTD(COSCO QINGDAO)** **(hereafter, "Buyer")**

Attention: Mr. Cao Qixiao
Postal Address: 61 Middle Road 266071 Qingdao CHINA
Street Address:
Telephone No:
Fax :
Email Address: caoqixiao@coscoqd.com

The agreement between the parties set out in this Confirmation is a Confirmation pursuant to the Master Agreement.

In this Confirmation, "Master Agreement" has the meaning given to it in clause 10 if that clause applies, and if it does not, means any master agreement by which the Transaction entered into pursuant to and in accordance with this Confirmation is governed.

Until superseded by notice information in a subsequent Confirmation or other communication, the above addresses are hereby recognized as the correct addresses to which any notification under this Confirmation may be properly served.

The terms of this Confirmation are as follows:

**1) Contract Route(s):**

The average of Routes 1A, 2A, 3A and 4 (Transatlantic TC Round Voyage, TC trip out, Transpacific TC Round Voyage and TC Trip Back) of the Baltic Panamax Index defined on the Contract Date including any relevant official forthcoming amendments published at the Contract Date which will become effective prior to the settlement of this Agreement.
as defined by the Baltic Exchange on the Contract Date and any route replacing or substituting that route subsequently published by the Baltic Exchange on or before the Settlement Date and with effect from the date of such replacement or substitution.

banchero costa fd spa derivatives via pammatone 2 · 16121 Genova

**2) Contract Rate:**

USD 54.000 per day

**3) Contract Quantity:**

(i) Total Quantity: 45.50 days (50,00% standard contract)

(ii) Quantity by Contract Month: (April 2008: 15,0) (May 2008: 15,5) (June 2008: 15,0)

**4) Contract Month(s):**

April 2008, May 2008, June 2008

**5) Contract Period:**

April-June 2008

**6) Settlement Dates:**

The last Baltic Exchange Index publication day of each Contract Month.

**7) Settlement Rate:**

(a) Each settlement rate (the "**Settlement Rate**") shall be the unweighted average of the rates for the Contract Route(s) published by the Baltic Exchange over the Settlement Period (defined as the average of all Baltic Exchange Index publication days of the applicable Contract Month up to and including the Settlement Date).

(b) If for any reason the Baltic Exchange cannot provide any rate required for establishing the Settlement Rate, then the current chairman of the FFABA may be instructed by either party to form a panel comprising of a minimum of three independent brokers (the "**Panel**") to determine an appropriate rate, which determination will be final and binding on both parties.

(c) Each party shall bear its own costs and expenses in connection with any determination made pursuant to this clause 7.

(d) The parties shall severally indemnify and hold harmless each of the members of the Panel, the Baltic Exchange and its members and the FFABA and its members (the "**Indemnified Persons**") against all liabilities, actions, demands, costs and expenses incurred by any of them arising directly or indirectly out of or in connection with the formation of the Panel and any determination made by the Panel.

(e) As between the parties, each party shall have a right of contribution against the other party in respect of any indemnity payment made pursuant to the preceding paragraph so that their respective liabilities pursuant to that paragraph shall be equal.

**8) Settlement Sum:**

The "**Settlement Sum**" is the difference between the Contract Rate and the Settlement Rate multiplied by the Quantity by Contract Month. If the Settlement Rate is higher than the Contract Rate, the Seller shall pay the Buyer the Settlement Sum. If the Settlement Rate is lower than the Contract Rate, the Buyer shall pay the Seller the Settlement Sum.

**9) Payment Procedure and Obligations:**

(a) Payment of the Settlement Sum is due on the later of two (2) London business days after presentation of payee's invoice (with complete payment instructions) or five (5) London business days after the Settlement Date and for this purpose a "**London business day**" means a day (other than a Saturday or Sunday) on which commercial banks are open for business in London). The Settlement Sum will be deemed "paid" when it

has been received into the bank account designated by the payee.

(b) Payment of the Settlement Sum shall be made telegraphically, in full, in United States dollars. The costs incurred in effecting payment shall be for the account of the payer. Payment may only be effected directly between the parties. The Settlement Sum shall be paid without any deduction or set-off except as permitted pursuant to the Master Agreement or otherwise as agreed by the Buyer and the Seller in writing.

derivatives

**10) ISDA Master Agreement:**

**This clause 10 applies only if either:**

**(i) the Confirmation does not already constitute a Confirmation under an existing master agreement entered into by the parties to this agreement; or**

**(ii) the parties agree, either by virtue of clause 21 or otherwise, that the terms of the Master Agreement that is constituted by this clause are to replace any such existing master agreement.**

This Confirmation constitutes and incorporates by reference the provisions of the 1992 ISDA® Master Agreement (Multicurrency - Cross Border) (without Schedule) as if they were fully set out in this Confirmation and with only the following specific modifications and elections:

(a) Section 2(c)(ii) shall not apply so that a net amount due will be determined in respect of all amounts payable on the same date in the same currency in respect of two or more Transactions;

(b) Seller is the Calculation Agent except where the Seller is the Defaulting Party in which event Buyer is the Calculation Agent;

(c) the most current published set of ISDA® Commodity Definitions and ISDA® Definitions shall apply;

(d) Credit Event Upon Merger is applicable to both parties;

(e) for the purposes of payments on Early Termination, Loss will apply and the Second Method will apply;

(f) Automatic Early Termination will apply to both parties;

(g) the Termination Currency is United States dollars;

(h) the Applicable Rate shall mean the one month USD-LIBOR plus 2%, reset daily and compounded monthly;

(i) Local Business Day or banking day shall each refer to such a day in London;

(j) such other modifications as shall be necessary for such incorporation;

(k) references to "this Master Agreement", "this Agreement", "herein" and other like expressions shall be construed as being references to this Confirmation incorporating such provisions,

and this Confirmation, including such incorporated provisions, shall govern the Transaction referred to in this Confirmation and any other Transaction referred to in clauses 21 and 22.

The agreement constituted and incorporated by the incorporation of the provisions of the 1992 ISDA® Master Agreement (Multicurrency - Cross Border) (without Schedule) pursuant to this clause is referred to in this Confirmation as the "Master Agreement".

**11) Capacity and Good Standing:**

In line with and in addition to (as appropriate) the representations contained in Section 3 of the Master Agreement, each party represents to the other party that:

(a) it is duly organized and validly existing under the laws of the jurisdiction of its organization or incorporation, and is solvent and in good standing;

(b) it has the power to execute, deliver, and perform this Confirmation;

(c) all governmental and other consents that are required to have been obtained by it with respect to this Confirmation have been obtained and are in full force and effect and all conditions of any such consents have been complied with;

(d) in the event that a party to this Confirmation is a person organized under, domiciled in, or having its principal place of business in, the United States, each party represents to the other party that it is an "eligible contract participant" as defined in § 1a(12) of the Commodity Exchange Act (7 U.S.C. § 1a(12), as amended).

banchero costa & c. spa derivatives via pammatone 2 16121 genova

**12) Telephone Recording:**

Each party consents to the recording of telephone conversations in connection with this Confirmation.

**13) Commission:**

Each of the parties agrees to pay brokers' commission to any broker (a "**Broker**") as agreed with any Broker.

**14) Non-Assignability:**

Except as provided in Section 7 of the Master Agreement, this Confirmation is non-assignable unless otherwise agreed in writing between the parties to this Confirmation.

**Principal To Principal:**

This Confirmation is a principal to principal agreement with settlement directly between the two parties. Both parties agree that any Broker shall be under no obligation or liability in relation to this Agreement. Both parties agree jointly and severally to indemnify and hold harmless any Broker against all actions, including but not limited to all claims, demands, liabilities, damages, costs and expenses both from the two parties and any third party. Claims, demands, liabilities, damages, costs and expenses suffered or incurred are to be settled directly by or between the two parties.

**16) Law and Jurisdiction:**

This Confirmation shall be governed by and construed in accordance with English law and shall be subject to the exclusive jurisdiction of the High Court of Justice in London, England. The terms of Section 12(a) of the Master Agreement notwithstanding, proceedings may be validly served upon either party by sending the same by ordinary post and/or by fax to the addresses and/or fax numbers for each party given above.

**17) Entire Agreement:**

This Confirmation and the Master Agreement set out the entire agreement and understanding of the parties with respect to the subject matter of this Confirmation and supersede all oral communication and prior writings with respect thereto.

**18) Payment Account Information:**

| For Seller: | For Buyer: |
| --- | --- |
| Bank address: | Bank address: |
| Aba: | Aba: |
| Swift address: | Swift address: |
| Account no.: | Account no.: |
| Sort code: | Sort code: |

**19) Third party rights**

(a) Unless provided to the contrary in this Confirmation, a person who is not a party to this Agreement has no rights under the Contracts (Rights of Third Parties) Act 1999 to enforce or enjoy the benefit of any term of this Confirmation.

(b) Any Indemnified Person and any Broker shall have the right to enjoy the benefit of and enforce the terms of clause 7(d) in the case of any Indemnified Person and clause 13 in the case of any Broker.

(c) Notwithstanding any term of this Confirmation, the consent of any person who is not a party to this Confirmation is not required to rescind or vary this Confirmation.

**20) Partial Invalidity**

If, at any time, any provision of this Confirmation or the Master Agreement is or becomes illegal, invalid or unenforceable in any respect under any laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions nor the legality or enforceability of the provision under the laws of any other jurisdiction will in any way be affected or impaired.

**21) Inclusion of historical Confirmations under Master Agreement**

(a) **Unless the parties to this Confirmation specifically agree otherwise in writing, this clause 21 shall apply in accordance with its terms.**

(b) This clause 21 applies to this Confirmation and to every agreement entered into between the parties to this Confirmation (and no other persons) before the date of this Confirmation that is in respect of a forward freight swap, option or derivative:

(i) that is expressly stated to be subject to, or is subject to substantially the same terms as, either the FFABA 2000 terms, the FFABA 2005 terms or the FFABA 2007 terms, with or without amendment; and

(ii) in the case of a Confirmation that is stated to be subject to, or subject to substantially the same terms as, the FFABA 2007 terms that does not incorporate a clause substantially in the same form as this clause 21.

(c) Each agreement to which this clause 21 applies shall be treated as a Confirmation under the Master Agreement constituted pursuant to clause 10 as if such agreement had been entered into between the parties on the terms of the Master Agreement on the date of the first such Confirmation.

(d) If there is any inconsistency between the provisions of any agreement constituted pursuant to paragraph (c) above and the agreement constituting a Transaction to which this clause 21 applies, the provisions of the agreement constituting the Transaction to which this clause 21 applies will prevail for the purposes of the Transaction under such agreement.

(e) This clause 21 shall not affect any rights or obligations of the parties under any Transaction accrued before the date of this Confirmation.

(f) This clause 21 is effective notwithstanding any entire agreement clause or similar provision in any such agreement relevant to any such Transaction.

22) Inclusion of subsequent Confirmations under Master Agreement

(a) Unless the parties to this Confirmation specifically agree otherwise in writing, this clause 22 shall apply in accordance with its terms.

(b) This clause 22 applies to every Confirmation that is in respect of a forward freight swap, option or derivative entered into between the parties to this Confirmation (and no other persons) subsequent to an agreement incorporating a Master Agreement (as defined in and pursuant to a clause substantially in the same form as and equivalent to clause 10) having been entered into by them.

(c) Each such subsequent Confirmation shall constitute a Confirmation under the Master Agreement on the terms of clauses 21(c), (d), (e) and (f) as if they were incorporated and fully set out in this clause 22 with appropriate and necessary modifications for such incorporation.

| Signed for the Seller by | Signed for the Buyer by |
| --- | --- |
| ............................................ | ............................................ |
| Duly Authorized Signatory | Duly Authorized Signatory |